Americo **MOSCA**

v.

The **UNITED STATES.**

No. 227–68.

United States Court of Claims.

Nov. 14, 1969.

Americo Mosca, plaintiff, pro se.

P. F. Arseneau, Washington, D. C., with whom was William D. Ruckelshaus, Asst. Atty. Gen., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION FOR DISMISSAL FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

COWEN, Chief Judge:

Plaintiff, who appears *pro se,* has been granted a United States patent for a chemical fungicide known as Aluminum Ions Fungicide (Cuneo Mixture) which has not yet been made, used, sold or distributed within the United States. Plaintif has applied to the United States Depàrtment of Agriculture for the registration of his product in order to commercially market the Cuneo Mixture throughout the United States. The application has beeń denied and plaintiff asserts that his denial was wrongful, unconstitutional and has voided his patent and deprived him of substantial business profits he otherwise would have made.

Plaintiff calculates such profits would have amounted to three billion dollars by 1979, the date of expiration of his patent, and he therefore sues for judgment in that amourit. The case is now before us on defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

I

Plaintiff, On August 7, 1962, received U.S. Patent No. 3,048,516, entitled

"Aluminum Fungicide," protecting against patent infringement a particular mixture of chemicals designed to combat plant diseases caused by fungi or vegetable parasites. In February of 1966, plaintiff made preliminary inquiries to the Food & Drug Administration in the Department of Health, Education, and Welfare, requesting information pertaining to the marketing of his product. He was advised in March of 1966 that the marketing of pesticides within the United States was governed by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 135–135k (1964) (hereinafter referred to as the Insecticide Act) which requires that any fungicide to be shipped in interstate commerce must have the text of its labels registered with the United States Department of Agriculture. Plaintiff was also advised that according to the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–92 (1964), and accompanying regulations, 7 CFR §§ 363 et seq. (1969), any pesticide chemical which is not generally recognized by qualified experts as safe for use when added to a raw agricultural commodity shall be deemed unsafe and therefore not entitled to registration, unless the pesticide is determined to be within an allowed tolerance or exempted by the Secretary of Health, Education and Welfare. 21 U.S.C. § 346a(a) (1964); 7 CFR § 363.11 (1969). In addition, plaintiff was notified that it would be necessary to obtain a certificate of usefulness from the Secretary of Agriculture, the certificate to be issued after the submission of detailed reports of the product's effectiveness. 21 U.S.C. §§ 346a(a) and 346a(l) (1964). In November of 1966, plaintiff submitted an application for registration of his fungicide to the Department of Agriculture and petitioned for a tolerance to the Department of HEW, but his submissions although relevant to the effects of plaintiff's product in Italy, did not show the effect of the Cuneo Mixture on American crops and under American climatic conditions, and were therefore deemed insufficient to justify registration. For two years thereafter, voluminous correspondence was exchanged between the parties concerning plaintiff's applications, but at the end of this time both parties' positions remained essentially unchanged, and on August 6, 1968, plaintiff filed his petition in this court. By an order of the court, filed on July 7, 1969, the parties were directed to file additional briefs on the question of whether there was a taking of plaintiff's property under the Fifth Amendment, if it is assumed that the governmental regulations involved were invalidly applied.

## II

Since plaintiff is a layman in the legal profession, endeavoring to represent himself, we have had some difficulty in ascertaining the precise basis upon which he seeks recovery. After a careful study of plaintiff's petition, as clarified by the written statement of his oral argument furnished to the court, we find the following to be a fair summary of his claims:

1. The United States has irrevocably acknowledged the complete safety and efficacy of the Cuneo Mixture by granting plaintiff the patent rights on that product and the attempts of the Government to prevent marketing of the product are in contravention of the provisions of 35 U.S.C. § 261 (1964) and of Article I, Section 8 of the United States Constitution. Plaintiff says that the Government's interference has resulted in the voiding of plaintiff's patent rights.

2. The regulations implementing the Food, Drug and Cosmetic and Insecticide Acts, as applied, are invalid, in defiance of the Fifth Amendment, and have resulted in a taking of plaintiff's property without just compensation.

Although defendant vigorously denies plaintiff's allegation that the regulations were wrongfully applied in this instance, we do not think that a trial to resolve these factual issues is required. The case is before us on defendant's motion to dismiss for failure to state a claim upon which relief can be granted, and we are assuming for the purpose of ruling on the

motion that there was an improper application of the regulations.[1]

## III

We shall first consider those contentions of plaintiff which are based upon the provisions of 35 U.S.C. § 261 and Article I, Section 8, of the United States Constitution.

■ 35 U.S.C. § 261 deals with the right of a patentee to assign his patent or to convey exclusive rights therein to others. There is nothing in the language of that statute which confers jurisdiction on this court to award damages to plaintiff on any of the grounds covered by his pleadings. Our statutory jurisdiction in patent cases is limited by the provisions of 28 U.S.C. § 1498 (1964) to actions for the recovery of reasonable compensation, where an invention covered by a patent is used or manufactured by or for the United States without the consent of the owner of the patent. Since plaintiff does not claim that the Government has used his invention in any way, it is obvious that this statute has no application here.

■ We find that plaintiff's reliance on Article I, Section 8 of the Constitution is also misplaced.[2] Even if we were to agree with plaintiff that the reguations before us were not applied in the best interest of scientific progress, the action of the Government did nothing to deprive plaintiff of the exclusive right to his invention. He still retains every incident of ownership in the patent and the Government has not in any way interfered with his right to exclude others from making, using, or selling his invention. However, plaintiff takes the position that once his patent was issued, he was automatically entitled to registration and to freely market his product in interstate commerce. It follows, he says, that the unfavorable action taken by the governmental agencies in this case voided his patent in violation of the provisions of Article I, Section 8 of the Constitution. We must reject this contention in view of the unbroken line of authorities holding that "the franchise secured by a patent consists only in the right to exclude others from making, using, or vending the thing patented without the permission of the patentee." United Shoe Mach. Corp. v. United States, 258 U.S. 451, 463, 42 S.Ct. 363, 367, 66 L.Ed. 708 (1922); Special Equipment Co. v. Coe, 324 U.S. 370, 378, 65 S.Ct. 741, 89 L.Ed. 1006, (1945). Moreover, the ownership of a patent does not exempt the patentee from compliance with laws or regulations promulgated in the public interest. United Shoe Mach. Corp. v. United States, *supra*, 258 U.S. at 463, 42 S.Ct. 363.

## IV

■ After analyzing plaintiff's various contentions, we come then to the only possible ground upon which he could predicate any recovery—his claim that the improper application of the regulations constituted a Fifth Amendment taking of the capitalized value of his patent. Admittedly, the Government has not seized, used, or physically destroyed any property belonging to the plaintiff. The most that can be said is that the manner in which the regulations were applied here prevented plaintiff from earning profits which he hoped to derive from the sale in interstate commerce of a fungicide to be manufactured by using the formula set forth in his invention. His is not a claim for a decline in profits because he never had a business in the United States from which he obtained profits.

We recognize that the Supreme Court has declared that there are instances in

---

1. This assumption enables us to consider the case in the light most favorable to the plaintiff, because if there was no invalid application of the regulations, it is quite clear that he has no claim upon which relief could be granted in this court.

2. Article I, § 8 reads in part:
   "The Congress shall have Power * * * To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

which governmental actions in the form of regulation may constitute a taking by severely diminishing the value of property. Goldblatt v. Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); United States v. Central Eureka Mining Co., 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958). However, the cases which the Supreme Court cited in support of this view involved much more than mere regulatory action; they entailed a physical possession, use, or destruction of plaintiff's property. *See, e. g.*, United States v. Kansas City Life Ins. Co., 339 U.S. 799, 70 S.Ct. 885, 94 L.Ed. 1277 (1950) and United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946).

We do not read these decisions as holding that a wrongful denial of a license by a regulatory agency, pursuant to regulations having nationwide application, constitutes a taking under the Fifth Amendment.

■ There is also a grave doubt as to whether plaintiff's hope of earning profits in the future is property within the contemplation of the Fifth Amendment. It is well established that profits to be derived from a business conducted on property that it taken by the Government are not considered as property within the meaning of the constitutional provision. A. G. Davis Ice Co. v. United States, 362 F.2d 934, 936 (1st Cir. 1966); *see also* Bothwell v. United States, 254 U.S. 231, 233, 41 S.Ct. 74, 65 L.Ed. 238 (1920). In any event, we find that there was no Fifth Amendment taking in this case.

Furthermore, we think that the disposition of this case is governed by our decision in Eastport S.S. Corp. v. United States, 372 F.2d 1002, 178 Ct.Cl. 599 (1967). As the court there stated, our jurisdiction in noncontractual actions filed under the Tucker Act is limited to money claims which fall into two general categories: those in which the plaintiff seeks the return of money paid over to the Government, and those in which a particular provision of law, expressly or by implication, grants him the right to recover a certain sum. Since plaintiff's claim does not fall within the first category, we must look to the statutes and regulations involved here to see whether he has a valid claim falling within the second category. We find nothing in these statutes or regulations to indicate that the United States will compensate an applicant for a loss of anticipated profits because of the improper failure to approve his applications. As we said in Eastport S.S. Corp. v. United States, *supra*, were we to compensate plaintiff for his anticipated profits,

> \* \* \* we would necessarily have to open the doors to similar claims by other applicants who suffer commercial damage from a wrongful denial of a license or permission by \* \* \* other agencies (or as a result of the agency's improper refusal to act). 372 F.2d at 1009, 178 Ct.Cl. at 608.

The major portion of plaintiff's argument has been devoted to his efforts to show that his patented fungicide is a revolutionary discovery, which will help to produce healthy, noncontaminated and abundant crops in this country. We can understand plaintiff's natural pride in his invention, but because this case is before us on defendant's motion to dismiss, we do not pass on the efficacy, safety, or worth of his product. However valuable and useful his invention may be, we are compelled to conclude that plaintiff has not stated a claim upon which this court may grant relief.

Defendant's motion is granted, and plaintiff's petition is dismissed.