SkeltoN, Judge,
concurring:
Although I concur in the result reached by the majority,. I do not agree with all of the reasoning in the majority opinion. Furthermore, I believe there are issues and principles of law not included in the majority opinion that should be discussed and disposed of. Accordingly, I submit the following concurring opinion.
In these three consolidated cases, plaintiff, Margaret J. Plendricks and 140 other named plaintiffs, are married' women who were either employees on January 10, 1971, or thereafter, up to the date of the filing of their petitions, of the Panama Canal Government, or of the Canal Zone office of an agency of the United States Government. They claim that they have been deprived by regulations issued by the Secretary of the Army in 1971 and 1974 of what is known-as an overseas tropical allowance differential which they contend should have been paid to them in addition to their basic compensation. They sue here for the amount alleged to -be due each of them, respectively, as such tropical differential allowance during the time each of them, respectively,, was such employee between January 10, 1971, and the date of the filing of their petitions, and up to the date of judgment in this case.
The facts show that under the provisions of the Act of August 24, 1912, ch. 390, 37 Stat. 560, 561, Congress established a government for the Canal Zone and authorized the President to appoint the governor, and as supplemented by Executive Order 1888 of February 2, 1914, authorized the *285 President to fix the compensation of employees of the Canal Zone Government in such amount as not to exceed by more than 25 percent the compensation paid for the same or similar services to persons employed by the Government in the continental United States. See 2 C.Z.C. § 81(c) (1934 Ed.) for a verbatim codification.
On January 25,1955, the Government of the United States .and the Republic of Panama entered into a treaty of mutual understanding and- cooperation which granted Panamanian .citizens equality of opportunity for employment in all United .States' Government offices in the Canal Zone for which they -were qualified, and provided for the payment to them of the .-same basic wages paid to United States citizen employees. It was’provided in such agreement that there could be added to the base pay of a United States citizen employee an .amount representing a tropical differential allowance.
Thereafter, on February 7,1955, the President, by Executive Order 10595, designated the Secretary of the Army to ■supervise the administration of the Canal Zone Government iby the Governor of the Canal Zone and to exercise the powers ■vested in the President by 2 C.Z.C. § 81 (1934 Ed.).
On July 25, 1958, Congress enacted 72 Stat. 405, et seq., now codified as Subchapter III of ch. 7 of Title 2 C.Z.C. (1962) Ed.), 78A Stat. 6 et seq., with respect to the Government of the Canal Zone and governing the wage and .employment practices of the United States Government in the Canal .Zone. Tliis. is the statute presently in force. It provided in ^pertinent part as follows:
2 C.Z.C. § 31. Ganal Zone Government; administration and -functions generally. - ■ '
The Canal Zone Government, an independent agency .of the United States, shall:.
(1) be administered, under’ the supervision of the President or such officer of the United. States as may be designated by him, by a Governor of the Canal .Zone; * * * 76AStat. 7.
2 C.Z.C. § 32. Appointment and term of Governor.
The' President, ■ by and with the advice and consent of .the Senate, shall appoint the Governor , of the Canal *286 Zone. The Governor shall hold office for a term of four years and until his successor is appointed and has qualified. 76A Stat. 7.
2 C.Z.C. § 33. General powers and duties of Governor-
The Governor of the Canal Zone shall:
(1) have official control and jurisdiction over the Canal Zone; and
(2) perform all duties in connection with the civil' government of the Canal Zone, which is to be held,, treated and governed as an adjunct of the Canal. 76A. Stat. 7.
* £ * * *
2 C.Z.C. § 101. Appointment and compensation of Government employees.
(a) Except as otherwise provided by law, and subject to the supervision provided by section 31 of this-title, the Governor shall:
(1) appoint all officers and employees of the Canall Zone Government; and
(2) prescribe the compensation of officers and employees of the Canal Zone Government, and establish their conditions of employment, including matters relating to-transportation, medical care, leave, office hours, and! hours of labor.
(b) Compensation prescribed by the Governor under this section may not exceed, in any case, by more than 25 percent, the compensation paid for the same or similar services to persons employed by the Government in the continental United States. The definition of “continental United States” contained in section 141 of this, title applies to that term as used in this subsection. 76A Stat. 14.
The wage and employment practices are governed by the following:
2 C.Z.C. § 142. General rules governing wage cmd' employment practices.
(a) The head of each department shall conduct the-wage and employment practices in the Canal Zone of his department in accordance with the:
(1) principles established in item 1 of the Memorandum of Understandings set forth in section 1(b) of Public Law 85-550 (July 25,1958, 72 Stat. 405)-;
(2) provisions of this subchapter;
*287 (3) regulations promulgated by, or under the authority of, the President of the United States in accordance, with this subchapter; and
(4) provisions of applicable law.
(b)To the extent he deems appropriate, the President may:
(1) exclude any employee or position from this sub-chapter or from any provision of this subchapter; * * *. 76A Stat. 16.
2 C.Z.C. § 144. Compensation.
(a) The head of each department, in accordance with this subchapter, shall establish, and from time to time may revise, the rates of basic compensation for positions and employees under his jurisdiction.
(b) The rates of basic compensation may be established and revised in relation to the rates of compensation for the same or similar work performed in the continental United States or in such areas outside the continental United States as may be designated iri the regulations referred to in section 155(a) of this title.
(c) The head of each department may grant increases, in rates of basic compensation in amounts not to exceed the amounts of the increases granted, from time to time,, by Act of Congress in corresponding rates of compensation in the appropriate schedule or scale of pay. The ■head of the department concerned may make the increases effective as of such date as he designates but not earlier than the effective date of the corresponding increases provided by the Act of Congress.
(d) A rate of 'basic compensation established under this section may not exceed by more than 25 percent,, when increased by the amounts of the allowance and the differential authorized by section 146 of this title, the rate of basic compensation for the same or similar' work performed in the continental United States by-employees of the Government of the United States. 76A Stat. 17.
2 C.Z.C. § 145. Uniform application of standards and' rates.
The established employment standards and rates of' basic compensation established pursuant to sections 143; and 144 of this title shall be applied uniformly, irrespective of whether the employee or individual concerned is a, citizen of the United States or a citizen of the Republic^ of Panama. 76A Stat. 17.
*288 2 C.Z.C. § 146. Additional allowance and differential.
In addition to established basic compensation, there shall be paid to each employee who is a citizen of the United States such amounts as the head of the department concerned determines to be payable, as follows:
(1) an allowance for taxes which operate to reduce his disposable income in comparison with the disposable incomes of those employees who are not citizens of the United States; and
(2) an overseas (tropical) differential not in excess of an amount equal to 25 percent of the aggregate amount of the rate of basic compensation so established and the amount of the allowance provided in accordance with paragraph (1) of this section. 76A Stat. 17.
# % # # #
2 C.Z.C. § 148. Benefits based on compensation.
For the purpose of determining:
(1) amounts of insurance under the Federal Employees’ Group Life Insurance Act of 1954, as amended (5 U.S.C., sec. 2091, et seq.) [now 5 U.S.C. § 8702, et seq.'];
(2) amounts of compensation for death or disability under the Federal Employees’ Compensation Act as amended (5 U.S.C., sec. 751 et seq.) [now 5 U.S.C. § 8102, et seq.] ;
(3) amounts of overtime pay or other premium compensation;
(4) benefits under the Civil 'Service Eetirement Act, as amended (5 U.S.C., sec. 2251, et seq.) [now 5 U.S.C. § 8331, et seq.] ;
(5) annual leave benefits; and
(6) other benefits related to basic compensation — The basic compensation of each employee who is a citizen of the United States shall include the rate of basic compensation established for his position, and the amount of the allowance and differential determined, in the manner respectively provided by sections 144 and 146 of this title.
* * % % %
2 C.Z.C. §155. Administration by President; regulations; delegation of authority.
(a) The President shall coordinate the policies and activities of the respective departments under this sub-chapter, and may promulgate regulations necessary and appropriate to carry out the provisions and accomplish the purposes of this subchapter. ■
*289 (b) The President may delegate any authority vested in him by this subehapter, and may provide for the re-delegation of any such authority. 76A Stat. 19.
*****
Pursuant to the authority contained in the 1958 Act (2 C.Z.C. § 155(b) quoted above), the President issued Executive Order 10794 on December 10, 1958, 3 C.F.R. at 430-31 (1951 — 1958 Comp.) in which he delegated the authority granted by Congress to the President in 2 C.Z.C. §§ 142, 155(a) (1962 Ed.), to the Secretary of the Army. Pursuant to Executive Order 10794, the Secretary of the Army issued regulations on January 15, 1959, 24 F.R. 352, 5 C.F.R. § 1201 et seq. (1964 Ed.) providing in pertinent part as follows:
5 C.F.R. § 1201, et seq. (1964 Ed.)
§ 1201.3 Coverage.
(a) Coverage. The regulations in this chapter apply ■to all employees or applicants for employment, irrespective of citizenship, unless excluded in accordance with paragraph (b) of this section.
(b) Exclusions. The Secretary of the Army may, upon recommendation of the agency concerned, exclude employees or positions from the provisions of the Act or the regulations in this chapter or any provision of the Act or the regulations in this chapter and may extend rights and privileges to employees as provided in section 3(b) of the Act. * * * Positions and employees excluded from the provisions of the Act or the regulations in this chapter are published in § 1201.100.
# # ‡ # &
§ 1201.100 Exclusions.
Pursuant to the provisions of § 1201.3 (b) the following positions and incumbents thereof are excluded, to the extent indicated, from the provisions of the Act of July 25, 1958 (72 Stat. 405) and such regulations:
(a) The following positions, and the incumbents thereof, are excluded from all of the provisions of the Act, except section 16 thereof, and the regulations in this chapter.
(1) General Officers of the Panama Canal Company.
(2) Persons in the active military, naval, or public health service of the United States appointed to or employed by the Panama Canal Company or Canal Zone Government.
(3) The United States Attorney and Assistant United ■States Attorneys and the United States Marshal, Chief *290 Deputy United States Marshal, and Deputy United States Marshals for the Canal Zone.
(4) The magistrates.
■ (5) Hospital residents and interns, and other student hospital employees in those categories for which maximum stipends have been prescribed by the Civil Sendee Commission pursuant to statute.
(6)' Consultants and experts when employed under the provisions of section 15, Act of August 2, 1946, (5 U.S.C. 55a) or other statutory authority.
(7) Any employee excluded by the Act of June 19, 1952, as amended (5 U.S.C. [1964 Ed.] 150k), from coverage under laws administered by the Civil Service Commission. [Non-appropropriated fund activity employees.]
(8) Inmate employees of Corozal Hospital and the Palo Seco Leprosarium.
(9) Public Defender.
(10) The probation and parole officer and deputy parole and probation officers.
(11) Chauffeur, Car of President, Panama Canal Company.
(12) Caretaker and service employees assigned to residence of the Governor of the Canal Zone. ■
❖ * * * ifC
§ 1204.1 Uniformity of jot classification standards.
In order to apply the provisions of section 6 of the Act concerning uniform application of rates of basic compensation, job classification standards shall be uniform within and among all departments. Any problems arising in achieving such uniformity which cannot be resolved among the departments shall be referred to the Board for resolution. If resolution is, not achieved they shall then be forwarded to the Secretary of the Army for decision. .
§ 1204.2 Uniformity of compensation.
The rates of basic compensation for positions and employees, the overseas (tropical) differential and additional approved additives, such as tax factor, shall be uniform within and among all departments. Any problems arising in achieving such uniformity shall be referred to the Board for resolution. If resolution is not achieved they shall then be forwarded to the Secretary of the Army for decision.
*291 On August 18,1964, the President issued Executive Order 11171, 3 C.F.R. at 174-176 (1964 Supp.), which supplemented Executive Order 10794.
Executive Order 11171 provided in pertinent part as follows:
By virtue of tbe authority vested in me by Section 155 of Title 2 of the Canal Zone Code (76A Stat. 19), and as President of the United States, it is hereby ordered as follows:
S}« # ❖ ❖ ❖ '
Sec. 2. (a) Subject to the further provisions of this order, there is delegated to the Secretary of the Army the authority vested in the President by Sections 142 and 155 of Title. 2 of the Canal Zone Code:
(1) To exclude any employee or position from any or all provisions of subchapter III.
* ❖ * * ❖
(3) To coordinate the policies and activities of the respective departments under subchapter III,
(4) To promulgate such regulations as may be necessary and appropriate to carry out the provisions and accomplish the purposes of subdhapter III.
(b) The Secretary of the Army may. redelegate any of the authority delegated to him by subsection (a) of this section.
(c) In promulgating regulations pursuant to the authority delegated by this section (including regulations with respect to the matters covered by Sections 3 and 4 of this order), the Secretary.of the Army shall give effect to the following-described policies:
(1) Employment standards, rates of basic'compensation, availability of training facilities and programs shall be applied uniformly among all departments in the Canal Zone to all employees irrespective of whether they are citizens of the United States or of the Bepublic of Panama.
■ if: * * #
(3) Exclusions of employees or positions from any or all provisions of subchapter III and the extension of rights and privileges to employees, as provided in Section 142(b) of Title 2 of the Canal Zone Code, shall be made only in accordance with regulations issued under this order. Such regulations shall provide for excluding employees or positions from the Canal Zone Merit System only for reasons for which exclusions or exceptions are made from the competitive civil service.. ■
*292 All Canal Zone employees of the United States Government received a tropical differential allowance of 25 percent of their basic salary or compensation under the foregoing applicable statutes and Executive Orders from 1914 until October 10, 1964, when the Secretary of the Army issued regulations, 29 F.R. 14024, 5 C.F.R. § 1204.12 (1964 Rev.), now transferred by 31 F.R. 12202, 12344 to 85 C.F.R. § 253.135 (1967 Eev.), which reduced the differential allowance to 15 percent for certain persons and eliminated it entirely for certain other persons. These regulations provided in pertinent part as follows:
§ 253.135 Tropical differential
(a) An overseas, tropical differential for U.S. citizen employees who qualify under the provisions of paragraph (b) of this section shall be fixed by the head of each department in an amount equal to 15 percent of the aggregate compensation established under §§ 253.131 and 253.134. Such differential shall be reviewed periodically 'by the Secretary of the Army and adjusted to the extent necessary to furnish a suitable incentive in recruitment of qualified personnel and to provide pay benefits substantially equal to those accorded U.S. citizens employed by the Federal Government in comparable foreign areas.
(b) The tropical differential shall be paid to employees who are U.S. citizens except those in the following categories:
(1) A married woman whose husband resides in the Canal Zone or the Eepublic of Panama. This exclusion shall not apply to such a married woman if she establishes to the satisfaction of her department that:
(1) Her husband is physically or mentally incapable of self-support;
(ii) She is legally separated; or
(iii) Her husband is 51 percent or more dependent upon her for his support.
(2) A child or stepchild of a resident of the Canal Zone or the Eepublic of Panama who is under 21 years of age and unmarried or who, regardless of age or marital status, does not maintain a separate household.
(c) Notwithstanding the provisions of paragraphs (a) or (b) of this section, each U.S. citizen employee in service on October 11,1964, shall retain as a fixed tropical differential an amount equal to 25 percent of the aggregate compensation established under §§ 253.133 and *293 253.134 for the grade and pay step to which, he was assigned on July 20, 1964, or if employed after that date, for. the. grade and pay step to which he would have been assigned had he been employed on July 20, 1964; Calculation of the fixed differential shall be made without reference to any retroactive pay increases authorized subsequent to July 20, 1964. If the employee’s aggregate compensation is reduced after July 20,1964, by reason of demotion or otherwise, his fixed differential shall be adjusted to the rate which he would have retained had he been assigned the lower grade or pay step on July 20,. 1964. The retained rate of tropical differential shall continue to be paid only until one of the following events occurs:
(1) There is a break in service of one day or more;
(2) A 2-year period has elapsed since October 11,1964, and the employee is at that time, or thereafter becomes, ineligible to receive the differential under the conditions prescribed by paragraph (b) of this section; or
(3) The employee becomes eligible for the same or a greater amount of differential under paragraphs (a) and (b) of this section. When the fixed differential is discontinued under this subparagraph due to payment of compensation under §253.155 for an additional pay assignment, it shall be reinstated upon termination of such assignment.
(d) An employee may be paid tropical differential tuider this section only to the extent that such payment, when combined with his aggregate compensation established under §§ 253.133 and 253.134, does not exceed the current rate of step 5, GS-17, of the General Schedule of the Classification Act of 1949, as amended.
After the Secretary of the Army issued the regulations in 35 C.F.R.. § 253.135 in 1964, quoted above, a group of married women, including plaintiff Hendricks, who were Canal Zone employees of the United States, filed a suit in this court entitled Margaret J. Hendricks v. United States, No. 202-68 for recovery of the differential allowance that had been denied them by the 1964 regulations, claiming that the 1964 regulations discriminated against them. The case was settled by agreement of the parties on May 7, 1971, covering the claims of the then plaintiffs for the differential allowance for the period from October 11, 1966 to and including January 9, 1971. The settlement was made without prejudice to the rights of the plaintiffs to claim the difieren- *294 tial. allowance for the'.period beginning with and subsequent to'January 10,1971. The prior case, has nothing to do with the instant case, wherein the plaintiffs are claiming the differential allowance for the period after January 10,1971, However, it should be pointed out that the regulations have been materially changed by the regulations of 1971. and 1974, quoted below, which are quité different from the regtdations of 1964 under which..the prior, suit was filed, and, consequently, the claims of the plaintiffs here differ in- -many material ways with the claims of the plaintiffs in that unreported case.
On December .22, 1970, the. Secretary of the Army promulgated in 35 F.R. 19750-19751 the following changes, in pertinent part, in 35 C.F.R. § 253.135(b), effective January 10,1971:[1].
I I 1C CO r-1 CO lO
*
(b) The tropical differential shall be paid to employees who are U.S. citizens except as provided in the following subparagraphs:
(1) 'When a U.S. citizen employee is married to another U.S. citizen employee, the differential may be paid to one spouse only.
(2) When a U.S. citizen employee is married to a person not employed by a department such, employee .is eligible to receive the differential only if such employee is the member of the family whose job may reasonably be deemed to be the job which determines the location of the family in the area. The spouse of a person serving in the U.S. military forces in-the area shall not be deemed to be a person whose job determines such location.
(3) A child or stepchild of a resident of the Canal Zone or the -Republic of Panama who is under 21 years of age and unmarried is not eligible.
These provisions were applied to the plaintiffs until April 28, 1974, when the following changes in 35 C.F.R. § 253.135(b), published by the Secretary of the Army on April 16, 1974, 39 F.R. 13650-13651, becamé effective: ■
H: H: ❖ ❖
*295 (b) The tropical differential shall be paid to employees who are Ü.S. citizens except as provided in the following subparagraphs:.
(1.) When a U.S. citizen employee, is married .to an-, other U.S. citizen employee, the differential may be paid to one spouse only. ^
(2) The U.S. citizen employee whose spouse is a mem-her of a U.S. military service stationed in the area may be paid the differential only to the extent the amount of the' differential otherwise payable exceeds the' amount of the total housing allowance (BAQ plus the housing' portion of the station allowance) ; established’ for 'Panama City, Republic of Panama for. a military member having the same rank and family, size as the employee’s military spouse. The U.S. citizen employee whose spouse, by reason of U.S. Government employment in the Republic of Panama, is eligible under the Department of State Standardized Regulations (Government Civilians, Foreign Areas) (DSSR) for a living quarters allowance (LQA) may be paicLthe differential only to the extent the amount of the differential otherwise payable exceeds the amount of LQA established for Panama City, Republic of. Panama by sections 920 and 932.22 of the DSSR for one in the same quarters group and with the same family size as the employee’s spouse.
(3)- A child or stepchild of a resident of the Canal Zone of the Republic of Panama who is under 21 years of age and unmarried is not eligible.
Before considering the various contentions and arguments of the plaintiffs, I wish to point out that the purpose of the tropical differential was as stated by the Fifth Circuit Court of Appeals in Leber v. Canal Zone Central Labor Union & Metal Trades Council, 383 F. 2d 110 (1967), cert. denied sub nom. Bramlett v. Leber, 389 U.S. 1046 (1968) as follows:
The purpose of the differential is admitted to be an inducement to get American citizens to work overseas in so-called hardship areas and" to. alleviate some of the financial, burdens, of taking such employment. * * * [Id. at 120.]
This purpose is also shown in. the text .of the 1971 regulations where it is stated that Section 253.135(a) provides for periodic review and adjustment by the Secretary.of the Army:
* * * [T]o. the extent necessary to furnish a-suitable incentive in recruitment of qualified personnel and to *296 provide pay benefits substantially equal to those accorded U.S. citizens employed by the Federal Government in comparable foreign areas.
This discretionary authority vested in the President and delegated to the Secretary of the Army appears to be laudable and reasonable. The controlling statute is 2 C.Z.C. § 142 (b) (1) which gives the President, and through him, the Secretary of the Army full discretion and authority to exclude any employee or position from the coverage of the Act that provides for the payment of a tropical differential allowance. See the Leber case, supra (383 F. 2d 110, 116-19).
The Secretary of the Army, in promulgating the two versions of 35 C.F.R. § 253.135 that are currently under review herein, (1971 and 1974), has exercised the discretion vested in him with the result being that the various plaintiffs are employees who have been excluded from the coverage of the tropical differential. In an analogous situation, the court in Port Authority of Saint Paul v. United States, 193 Ct. Cl. 108, 432 F. 2d 455 (1970), relying upon the Supreme Court’s decision in Udall v. Tallman, 380 U.S. 1, 16 (1965), stated that:
* * * [T]o sustain an administrative interpretation of a regulation issued by it, it is not necessary to find that the agency construction is the only reasonable one, or even that it is the result a court would have reached had the question arisen in the first instance in judicial proceedings.
Where administrative control has been authorized by Congress, the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286-87 (1934). [Id. at 120, 432 F. 2d at 461.]
The regulations in question appear to have a rational basis and purpose and evidence a valid exercise of discretion by the Secretary of the Army.
There are four basic categories of United States citizen-employees who were made ineligible to receive the differential under the regulation of the Secretary of the Army which became effective on January 10, 1971. Each of these *297 is a category of persons to whom the Secretary of the Army determined it was not necessary to offer a recruitment incentive:
(1) An employee whose spouse also is a Government employee and who also is the family member who has elected to receive the differential (35 C.F.R. §253.135(b) (1)). "Where one spouse of a family unit is living and working in the Canal Zone and is being paid a differential as an inducement to live and work there, it is a valid presumption that no further incentive is necessary to induce the husband or wife to live in the Canal Zone.
(2) An employee member of a family unit whose presence in the Canal Zone is attributable to the job of his or her spouse. (35 C.F.R. § 253.135(b) (2)). Where a family has chosen to make the Canal Zone its home, ¡because of the employment of one spouse in the private sector, it is unnecessary to pay a differential to the husband or wife in order to keep him or her in the area for employment by the United States Government.
(3) An employee whose spouse is serving in the United States military forces and who is assigned to the Canal Zone area (35 C.F.R. § 253.135(b) (2)). When one spouse is stationed in the area as an active duty member of the United States Armed Forces, and the family, if it opted to set up a residence in the Canal Zone, is provided rent free quarters or a quarters allowance, the husband or wife has sufficient incentive to live in the area without receipt of the tropical differential.
(4) An employee who was under 21 years of age, unmarried and the child or stepchild of a resident of the Canal Zone or the Republic of Panama (35 C.F.R. § 253.135 (b) (3)). It is sufficient to note that a person who is under 21 and unmarried is a minor under the Canal Zone Code and that such persons are entitled to parental support and could not normally maintain a separate household (4 C.Z.C. § 31, 78A Stat. 78). However, it is also quite obvious that in almost all instances when an individual who graduates from high school, or otherwise enters the labor market while a resident of the Canal Zone, that individual is not present in *298 the Canal Zone for any reason other than bis or her family unit' resides there and the presence of these individuals in the Canal Zone would not be affected by the payment or nonpayment of a tropical differential..' '
Effective April 28, 1974," the regulation was modified to allow' payment of the differential in certain cases in which it had previously been withheld (35. C.F.R. §. 253.135(b) (2) (1974))..The “reason for being in the area” test (subpara-graph (2) above) was eliminated because it had proven too difficult and costly to administer due to.the requirement to analyzethe subjective "factors .specified for consideration. In the case of employees married to members of the armed forces (subparagraph, (3) above), or to other Government employees eligible .to receive a quarters allowance, the differential may now be paid, but only insofar .as it exceeds the amount, of such a quarters allowance. This change was instituted because, for employment purposes, it was determined that this inducement may be required to lure the spouse into the Canal Zone.
While plaintiffs’ petitions do not so state, it is presumed that these cases are filed in this court under the Tucker Act, 28 U.S.C. § 1491 (1970), .which provides in pertinent part as follows:
The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded eithér upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. * * *
The plaintiffs say that they base their claims on. the following statutes and regulations:
1. Act of August 24, 1912, ch. 390, § 4, 37 Stat. 560, 561, now codified-as 2 C.Z.C. §101 (1962 Ed.);
• 2. Act of July 25, 1958, 72 Stat. 405, et seq., also known as Pub. L. 85-550, now codified in pertinent part as -2C.Z.C. §§ 141, 156 (1962 Ed.);
3. The provisions of 5 U.S.C. § 7152 (a) (Supp. I, 1971); '
*299 ■41 Regulations of the Secretary of the Army, issued on January 15, 1959, 24 F.R. 352, 5 C.F.R. § 1204;2, (1964 Rev.); . . .
5. Regulations of the Secretary of the Army promulgated on October 10, 1964, 29 F.R. 14024, 'as amended on January 10,. 1971, 35 F.R. 19750-19751, 35 C.F.R. §253.135 (1973 Rev.); and '
6. Part 713, Federal Personnel Manual § 4.3.
The plaintiffs attack the 1971 and 1974 regulations that exclude them from the benefits, of the differential allowance; and say that such regulations are invalid for various reasons which I will consider below. They argue that since the regulations are void, they are entitled to a money judgment for the differential allowance from January 10,1971, up to the date of judgment in this case.
In the first place, plaintiffs contend that the regulatiohs are void because they conflict with the statute, 2 C.Z.C. § 146. They say that 2 C.Z.C. § 146 requires the payment of a differential allowance to each employee who is a citizen of the United States. I do not so construe the statute. The plain wording of the statute is contrary to plaintiffs’ position. The statute provides:
2. C.Z.C. § 146. Additional allowance and differential.
In addition to established basic compensation, there shall be paid to each employee who is a citizen of the United States such amoimts as the head of the department concerned determines to be payable, as follows:
* * * * *
(2) an overséas {tropical) differential not in excess of an amount equal to 25 percent of the aggregate amount of the rate of basic compensation so established and the amount of the allowance provided in accordance with paragraph (1) of this section. 76A Stat. 17. [Emphasis supplied.]
It is clear that the statute provides for the payment of “such amounts as the head of the department [Secretary of the Army] determines to be payable” as a differential. The Secretary of the Army has determined that no amount shall be paid to the plaintiffs as a differential, because he has excluded them from the benefits of the differential allowance in the Act. There is no question that he had the authority *300 to so exclude the plaintiffs because 2 C.Z.C. § 142(b) (1) provides:
(b) To the extent he deems appropriate, the President may:
(1) exclude any employee or position from this sub-chapter or from any provisions of this subchapter; * * * 76A Stat. 16.
Of course, the Secretary of the Army exercised the authority of the President by appointment and delegation from him as shown by the various Executive Orders quoted above. The exclusion of the plaintiffs by the Secretary of the Army was a valid exercise of the authority delegated to him. See Leber, supra. Accordingly, instead of the statute mandating the payment of the differential to the plaintiffs, it actually denied them the differential. Plaintiffs’ argument in this regard must be rejected.
The plaintiffs argue that the regulations are invalid because they do not comply with 2 C.Z.C. §§ 144, 145 which pi’ovide that the rates of basic compensation shall be applied uniformly. This argument is unpersuasive. 'It will be observed that basic compensation is different from the differential allowance. This is shown by 2 C.Z.C. § 146 where it is stated:
In addition to established basic compensation, there shall be paid * * *.
(2) an overseas (tropical) differential * * * . [Emphasis supplied.]
The plaintiffs contend that the regulations discriminate against them because of their marital status in violation of 5 U.S.C. § 7152 and 7154(b) (Supp. III, 1973), which renders them void.
Section 7152 as amended by section 3 of Pub. L. 92-187, December 15, 1971, 85 Stat. 644, 5 U.S.C. § 7152 (Supp. III, 1973) now provides:
§ 7152 Marital status.
(a) The President may prescribe rules which shall pi’ohibit, as nearly as conditions of good administration warrant, discrimination because of marital status in an Executive agency or in the competitive service.
_(b) Regulations prescribed under any provisions of this title, or under any other provision of law, granting *301 benefits to employees, shall provide the same benefits for a married female employee and her spouse and children as are provided for a married male employee and his spouse and children.
(c) Notwithstanding any Other provision of law, any provision of law providing a benefit to a male Federal employee or to his spouse or family shall be deemed to provide the same benefit to a female Federal employee orto her spouse or family.
Section 7152 requires that married females be treated in the same way that married males are treated and that unmarried males and unmarried females are to be treated alike. The facts in this case show that those in each group were treated equally with each other. That the regulations do not discriminate against women because of sex is clearly evidenced by the fact that the regulations under attack herein are currently challenged in the district court by three male employees of the Panama Canal Company. Garcia v. Callaway, Civil No. 74-779 (D.D.C.), who claim they are discriminated against by the regulations because they are males.
Also, 2 C.Z.C. § 146 provides that “There shall 'be paid to each employee [male or female, single or married} * * *” a differential allowance. Regulation 35 C.F.R. § 253.135(b) provides that “The tropical differential shall be paid to employees who are U.S. citizens * * * [man or woman}.” [Emphasis supplied.) Thus, both the statutes and the regulations treat married men and married women alike, and treat single men and single women alike, and there is no discrimination because of sex. This analysis also answers plaintiffs’ argument that the regulations violate 5 U.S.C. § 7154(b) (Supp. III, 1973) because they discriminate against plaintiffs on account of sex. That regulation provides as follows:
§7154. Other prohibitions.
*****
(b) In the administration of * * * subchapters III and IV of chapter 53, * * * of this title, discrimination because of race, color, creed, sex, or marital status is prohibited with respect to an individual or a position held by an individual.
*302 • Plaintiffs not only contend that the regulations "discriminate against them because of sex, but also because of their marital status as married women. This argument is based on their allegation that the differential is paid to all single women' over 21, but is denied to plaintiffs because they are married, and that .this is a discrimination based on marital status prohibited by 5 U.S.C. §§7152, 7154. Whether this is a discrimination prohibited by these statutes may be questionable, because plaintiffs’ husbands have received the differential allowance ahd .it is. logical, to assume that the plaintiffs have received at least some indirect, benefit from the differential allowance granted to their husbands. However,, if does appear that the plaintiffs as married Women receive treatment ás to the differential that is different to some extent to the treatment received by single women over 2Í. The plaintiffs say this is a violation of sections 7152 and 7Í54(b) and that by reason thereof they-are entitled'tó recover'money damages from the United States. This theory of the plaintiffs is uhpersuasive. Even if this Unequal treatment of plain-' tiffs as'compared to single women is a violation of these statutes, it is not a violation that allows-the plaintiffs ‘to recover a' money "judgment agailist .the Government.- This, is- true-because of the discussion that follows. - - . - ■ - M ■
Sections'7l52'and'7l54(b)- are‘noUself-executing. They,' like.,5 U.S.C. -§ 5.301(a) (1) .(.equal-pay for. equal work)also relied on- by plaintiffs, are announcements of policy that provide no penalty if not -convplied with.: They domot mán-date the payment of any money to anyone if-.violated; Neither-do they create any substantive- rights in .any -employee in the-Canal- Zone that ■ will, support a claim, for money damages from the United States. / ■
The Supreme Court has occasion to decide this very question in a recent unanimous opinion in United States v. Testan, 424 U.S. 392 (1976). In that case the plaintiffs were attorneys who claimed they were wrongfully classified in a grade lower than attorneys in another agency who were doing .the same kind.of .wfirk. They,filed suit in the Court qf Claims for money damages as back pay under the Classification Act which provides in 5 U.S.C. § 5101 for “equal pay for substantially equal work,”- and- under thé Back Pay *303 Act, 5 U.S.C. § 5596 (b) . In reversing .tbe .decision of tbe Court of Claims, which had remanded the case.to the Civil Service Commission, the Supreme Court made many pronouncements that are applicable'- and very much in point in the instant case. The.Supreme Court.pointed out that the jurisdiction of the Court of Claims is limited to claims for “actual,'presently due money damages' from the United States,”' citing United States v. King, 395 U.S. 1 (1969). The Court went on. .to hold that the Tucker Act -is only a jurisdictional. Act which .does hot create any substantive rights against-the-United States for money'damages, 'and that' it. merely confers jurisdiction on 'the Gmirt of Claims whenever the 'substantivé--right exists. In' this regard, the Court held:' \
. ■ The'Tucker Act, .of course, :is. Itself-only' a -juiisdic-,'tional .statute; it does not..create.a-ny.substantive,right enforceable against the' United;States-for money, damages. The Court of Claims has recognized that- the. Act merely confers jurisdiction upon-it whenever-the substantive- right- exists. Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-607, 372 F. 2d 1002, 1007-1009 (1967). We therefore must determine whether the two other -federal statútes- that are invoked: by the respondents confer a substantive-right to recover-money damages from the-United States for the period of-their allegedly wrongful civil ■ service classifications.' [Id. at 398.]
The Court then considered the Classification. Act which provides for equal pay for substantially equal work, and held that the Act nowhere provides for an award of .back, pay to a person who has been erroneously classified. This, is analogous to the claims of the.plaintiffs in,the instant suit that they-have not been given “equal pay for equal work;”- that the salaries have riot been applied uniformly to all employees ; that they have been discriminated against becáuse of sex and marital status. But as was the case in Testan, with regard to the Classification Act, none .of. the statutes or regulations on which- the .plaintiffs base their claims .provide- for payment of money to-an employee-under the circumstances which they allege exist.. ' - - ' ■
*304 The Supreme Court held in Testan with, regard to the Classification Act:
* * * [I]t is implicit in the court’s decision in favor of respondents that a violation of the Classification Act gives rise to a claim for money damages for pay lost by reason of the allegedly wrongful classifications.
It long has been established, of course, that the United States, as sovereign, “is immune from suit, save as it consents to be sued * * * and the terms of its consent to -be sued in any court define that court’s jurisdiction to entertain the suit.” United States v. Sherwood, 312 U.S., at 586. And it has been said, in a Court of Claims context, that a waiver of the traditional sovereign immunity “cannot be implied but must be unequivocally _ expressed.” United States v. King, 395 U.S., at 4; Soriano v. United States, 352 U.S. 270, 276 (1957). Thus, except as Congress has consented to a cause of action against the United States, “there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States.” United States v. Sherwood, 312 U.S., at 587-588.
We pód no provision in the Classification Act that expressly makes the United States liable for pay lost through allegedly improper classifications. To be sure, in the “purpose” section of the Act, 5 U.S.C. § 5101, Congress stated that it was “to provide a plan for classification of positions whereby * * * the principle of equal pay for substantially equal work will be followed.” And in subsequent sections, there are set forth substantive standards for grading particular positions, and provisions for procedures to ensure that those standards are met. But none of these several sections contains an express provision for am, award of bach pay to a person who has been erroneously classified. [Emphasis supplied.] [Id. at 399-400.]
* * * As stated above, the Tucker Act is merely jurisdictional, and grant of a right of action must be made for specificity. The respondents do not rest their claims upon a contract; neither do they seek the return of money paid by them to the Government. It follows that the asserted entitlement to money damages depends upon whether any federal statute “cam, fairly be interpreted as mandating compensation by the Federal Government for the dannage sustained.” Eastport Steamship Corp. v. United States, 178 Ct. Cl., at 607, 372 F. 2d at 1009; Mosca v. United States, 189 Ct. Cl. 283, 290, 417 *305 F. 2d 1382, 1386 (1969), cert. denied, 399 U.S. 911 (1970). * * * [Emphasis supplied.] Id. at 400.]
* * * Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim — whether it be the Constitution, a statute, of a regulation — does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis Hn itself ’ “can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained” Eastport Steamship Corp. v. United States, 178 Ct. Cl., at 607, 372 F. 2d, at 1008-1009. We see nothing akin to this in the Classification Act or in the context of a suit seeking reclassification. [Emphasis supplied.] {Id. at 401-402.]
The Supreme Court then considered the Back Pay Act and held that it did not apply to wrongful classification claims. The Court said:
C. The Back Pay Act. This statute, which the Court of Claims found unnecessary to evaluate, in arriving at its decision, does.,not apply, in our view, to Wrongful classification claims. The Act does authorize retroactive recovery of wages whenever a federal employee has “undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the compensation to which the employee is otherwise entitled.” 5 U.S.C. § 5596(b). The statute’s language was intended to provide a monetary remedy for wrongful reductions in grade, removals, and suspensions, * * *.
:Jc
* * * [T]he Back Pay Act, as its words so clearly indicate, was intended to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position.
Ill
We therefore conclude that neither the Classification Act nor the Back Pay Act creates a substantive right in the respondents to backpay for the period of their claimed wrongful classifications. * * * [Id. at 407.]
The significance of the Testan case and its applicability to the instant case is that since the plaintiffs are not suing on contracts nor for money improperly exacted or retained, but are suing for money on the basis of the recited statutes and *306 regulations, they have not alleged a cause of action for money damages unless the statutes or regulations in themselves “can fairly be'interpreted as mandating compensation by the Federal Government for the damages sustained.” The statutes and regulations relied upon by the plaintiffs cannot be so interpreted.. None" of them mandate the payment of money to the employees' of the United States in the Canal Zone, except 2. C.Z.C,-§,146 and regulation 35. C.F-R. § 253.135 .of 1971 and as amended in-1974. But.this statute and.these regulations- are of no-help to the plaintiffs."It is" dearth at 2 C.Z.C. § 146 provides for the payment of siich amounts ás the.head of.the department (The Secretary of the Army) determines to he payable as a differential allowance. He determined that no.differential allowance should be paid to the plaintiffs by excluding them from the. provisions of the statute providing for the payment of such'differentia! allowance. This .exclusion was authorized by 2 C.Z.C. § 142 and; also by Executive Orders 10794 and 11171 Regulations 35 C.F.R. § 253.135(a) of 1971 -and 19,74 provided .for the payment, of the differential allowance to those who qualified under the provisions-of -Section 253.135 (b). The plaintiffs'did hot qualify finder Section 253:135.(b) because by its teyms in. both the ¿971 and. 1974 versions, the plaintiffs were by the express,terms of the regulations, excluded from the benefits of the differential allowance, payments.- .
-The plaintiffs also rely on 2 C.Z.C. § 101 (quoted above) which provides that the Governor of the Canal Zone shall appoint all employees of the Canal Zone Government and fix their-compensation, so that it will not. exceed by-more .than 25 percent the .compensation paid for the same or”.’similar services to persons employed-by the Government in the, continental United States. This, statute is of no help to the plaintiffs for several reasons. In the first place, the statute speaks of “Compensation” wliich within the meaning of -the various statutes 'and regulations, is different from the “tropical differ-entia! allowance” involved here. In the next place, 2 C.Z.C. § 101 does not mention the differential, allowance nor authorize the Governor to do, anything about it..Furthermore, the. amount' of compensation fixed by the Governor is discretionary within the 25 percent'limit mentioned above, and the statute'does not mandate the payment of rhoiiey to any of the *307 plaintiffs if their compensation is not fixed at a given amount, which brings their claims-within'the ambit of the Testan decision described above. Finally,, and most important, the determination of the amount of .the differential allowance and the United States citizen employees to whom it would be paid was vested exclusively in the Secretary of the Army, The court in- the Leber case held that the wage- and employment practices of the Canal Zone Government and of the Panama Canal Company.are subject to regulations.by the. Secretary of the Army as follows: ..
The Canal Zone Government and the Panama Canal Company are'departments within-the, meaning of the statutory definition. It is clear, therefore, that wage and-employment practices of these two entities are subject to regulation by the . Secretary of the Army:' HA is'the' pffi-cial charged with the responsibility of'coordinating the' -policies and activities of the respective departments and' promulgating;.regulations necessary--and- appropriate tó cany out the intent of the statutes;. [Footnote omitted.] [383 F. 2d at 114.] . ' .
Therefore, it is clear that the-plaintiffs have not cited any-statute or regulation, that-mandates the payment-of money damages- to them because of the alleged discrimination, and for that reason have not alleged a claim on which relief can be granted. Under these circumstances, since the plaintiffs' have not shown a substantive right, to presently due money-damages from the United States, we are not authorized by the Tucker Act to award them a judgment for money damages against the Government.'See. Testan, supra.
.Of course, as pointed, out above, the plaintiffs contend that; the regulations in- question here are invalid. The Fifth Circuit Court of. Appeals had-this identical problem before it in Leber, supra: In that case the regulations of 4964 were attacked as being void. Those regulations reduced the differ-, ential allowance, from 25 to 15 percent and also excluded certain employees from the benefits of the .differential, just-as the 1971 and-1974 regulations have done in oiir.-case.Tn that case the court held:
- (1) The Secretary off the Army had the authority granted by . Congress' to the President .and delegated by him to the -Secretary to pay a differential less than 25 percent.
*308 (2) The reduction of the differential from 25 to 15 percent was within the purview of 2 C.Z.C. § 155 and was not an abuse of discretionary power by the Secretary.
(8) The Secretary could make reasonable exclusion of United States citizens from the benefits of the differential, which he did.
(4) The authority granted by Congress to the ‘President and delegated by him to the Secretary was not an invalid or improper delegation of the legislative power of Congress to officials of the Executive Branch.
(5) The 1964 regulations were valid.
In the Léber case the plaintiffs were seeking the differential allowance denied to them by the 1964 regulations. To that extent, their claims were identical in principle to the claims of the plaintiffs under the 1911 and 1974 regulations in the case before us. ‘In my opinion, the well written decision of the Fifth Circuit Court of Appeals in that case was correct, and I would adopt the reasoning and holding of the court there expressed as to issues present in our case that are the same as those found in Leber.[2]
We should hold that the current Canal Zone Code, 2 C.Z.C. §§31-156 enacted by Congress authorized the President to appoint the Secretary of the Army with authority to administer the Canal Zone Government and to administer the wage and employment practices in the Canal Zone, and to determine the amount of the tropical differential allowance to be paid to United States citizen employees, and to determine which of such employees should receive the differential, and to exclude others (such as the plaintiffs) from the benefits of the differential; that the President did appoint the Secretary of the Army for said purposes and with such authority 'by Executive Orders 10794 and 11171; that the Secretary exercised such authority through the 1971 and 1974 regulations by reducing the differential from 25 to 15 percent of basic compensation and by excluding certain employees from the benefits of the differential (including the plain *309 tiffs); that such reduction in the differential and the exclusion of plaintiffs from its benefits was not an abuse of discretionary power by the Secretary; that the delegation of authority granted by Congress to the President and delegated by him to the Secretary was not an invalid or improper delegation of the legislative power of Congress to officials of the Executive Department; that the 1971 and 1974 regulations are not contrary to the applicable statutes and Executive Orders and are valid; that the regulations do not discriminate against the plaintiffs on account of sex; and that their discrimination as to martial status is not compensatory.
We should hold further that the plaintiffs have not alleged nor shown any substantive right to receive presently due money damages by reason of the violation of any statute or regulation on which they base their claims that mandate the payment of money to them by the United States; and that without such an allegation and showing, this court is not authorized by the Tucker Act to award them a recovery for money damages against the United States. See Testan, supra. It is clear that the plaintiffs have not alleged a claim on Avhich relief can be granted.
I concur in the result reached by the majority and would deny plaintiffs’ motion for summary judgment and grant defendant’s cross-motion, and dismiss plaintiffs’ petitions.

 No change was made in-35 C.F.R. § 253.135(a) of the 1964 regulations quoted above.

 In Reinheimer v. Panama Canal Co., 413 F. 2d 153 (5th Cir. 1969), on remand, 344 F. Supp. 510 (D.C.Z. 1972), aff’d. mem. 491 F. 2d 1271 (5th Cir. 1974), the court held on remand that the exclusion of certain pilots from the benefits of the differential allowance was upheld, and this was affirmed by the Fifth Circuit Court of Appeals.