**Norman C. MERCER, Petitioner,**

v.

**UNITED STATES MEDICAL CENTER FOR FEDERAL PRISONERS et al., Respondents.**

**No. 18256-1.**

United States District Court,
W. D. Missouri, W. D.

May 19, 1970.

---

Norman C. Mercer, pro se.

Bert C. Hurn, U. S. Atty., Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for respondents.

### MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

On April 22, 1970 this Court ordered the petitioner to file an appropriate supplementary pleading in which he should state and allege under oath the specific factual circumstances supporting the conclusory allegations made in his petition for habeas corpus relief filed April 7, 1970. On May 6, 1970, the petitioner filed an "Answer to Court's Order" which, like the initial petition, was quite obviously prepared by another inmate, one Larry V. Cooper, whose now voluminous Civil Action No. 17943-1 currently pends before this Court. Like Mr. Cooper, this petitioner has failed to com-

ply with the Court's order that his pleading be under oath.

The petitioner's principal complaint involves his allegation that despite repeated requests to various prison officials, he has been denied transfer to another federal penal institution.

■ Section 4082(a) of Title 18, United States Code provides:

A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.

It is clear from the decided cases interpreting this section that, in the absence of highly exceptional circumstances (which are neither alleged nor apparent in the case at bar), the designation of the institution in which a lawfully imposed federal sentence shall be served is vested in the Attorney General of the United States, acting through the Bureau of Prisons. See Lawrence v. Willingham, 373 F.2d 731 (10th Cir., 1967); Hogue v. United States, 287 F.2d 99 (5th Cir., 1961); cert. den. 368 U.S. 932, 82 S.Ct. 369, 7 L.Ed.2d 195, reh. den. 368 U.S. 972, 82 S.Ct. 441, 7 L.Ed.2d 402; Peek v. Ciccone, 288 F.Supp. 329, 338 (W.D.Mo.1968).

The same principles apply to the petitioner's allegation that he has wrongfully been denied an assignment to a Community Treatment Center. Discretion to make such an assignment under appropriate circumstances is vested in the Attorney General. See Title 18, United States Code, § 4082(c) and (f).

The petitioner further alleges that he and all other inmates at the Springfield Prison Camp are wrongfully denied (1) cash payments of $100 at the time of their release from custody; (2) work shoes and work clothing (of a type deemed appropriate by the petitioner) at the time of their release from custody; (3) cash loans at the time of their release from custody; (4) opportunity to earn money by working in prison industry; (5) vocational training programs; and (6) work release privileges.

With respect to the first three of these allegations, Sections 4281 and 4284 provide:

§ 4281. Discharge from prison

A person convicted under the laws of the United States shall, upon discharge from imprisonment, or release on parole, be furnished with * * * such suitable clothing *as may be authorized by the Attorney General, and, in the discretion of the Attorney General,* an amount of money not to exceed $100.

\* \* \* \* \* \*

§ 4284. Advances for rehabilitation

(a) The Attorney General, under such regulations as he prescribes, acting for himself or through such officers and employees as he designates, *may* use so much of the trust funds designated as "Commissary Funds, Federal Prisons" (31 U.S.C. 725s (22)), as may be surplus to other needs of the trust, to provide advances to prisoners at the time of their release, as an aid to their rehabilitation.

(b) An advance made hereunder shall in no instance exceed $150 except with the specific approval of the Attorney General, and shall in every case be secured by the personal note of the prisoner * * *. [Emphasis supplied.]

The petitioner does not allege that he is at the present time eligible for benefits under either of these sections and that such benefits have nevertheless been denied to him. (The petitioner's sentence data record indicates that he became eligible for parole on October 21, 1969 and that, allowing for full good time credit, his sentence will expire on October 27, 1971.) Instead, in response to the Court's order calling for specific factual particularization the petitioner has stated only his own speculation about the manner in which the Attorney General may, at the time of petitioner's release on some unascertained date in the future, exercise the discretion vested in him by the quoted statutory sections.

Under the circumstances, it would be improper for this Court by way of mandamus to order the Attorney General to exercise his discretion in a particular manner at some future date when wholly new and different factual circumstances may be in existence. On the permissible scope of mandamus relief, see the extensive discussion in Rural Electrification Administration v. Northern States Power Company, 373 F.2d 686, at pp. 694–695 (Footnote 14) (8th Cir., 1967), cert. denied 387 U.S. 945, 87 S.Ct. 2079, 18 L.Ed.2d 1332, where the Court noted:

> Traditionally mandamus is used to compel the performance of a ministerial duty or to compel the exercise of discretion *when such is required,* but never to influence that discretion. [Emphasis supplied.]

The petitioner's further allegations that he and "all other camp prisoners" are denied opportunity to earn money by working in prison industry or to participate in vocational training programs *do not present circumstances* which would presently entitle him to habeas corpus relief. The pertinent portions of Title 18, United States Code, § 4122 provide:

> (a) Federal Prison Industries [a government corporation described in § 4121] shall determine *in what manner and to what extent* industrial operations shall be carried on in Federal penal and correctional institutions for the production of commodities for consumption in such institutions or for sale to the departments or agencies of the United States, but not for sale to the public in competition with private enterprise. [Emphasis supplied.]
>
> \*  \*  \*  \*  \*  \*
>
> (c) Its board of directors *may* provide for the *vocational training* of qualified inmates without regard to their industrial or other assignments. [Emphasis supplied].

So long as Federal Prison Industries, Inc., and its board of directors do not administer the authority conferred by these subsections in a manner which is arbitrary or capricious, Courts may not properly interfere with their performance of their delegated functions. This principle is applicable to judicial review of administrative actions generally. See, in this regard, Consolo v. Federal Maritime Commission, 383 U.S. 607, 619–621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966) (also construing Section 10 (e) of the Administrative Procedure Act, 5 U.S.C. § 1009(e)); Calcutta East Coast of India and East Pakistan U.S.A. Conference v. Federal Maritime Commission, 130 U.S.App.D.C. 261, 399 F.2d 994, 997 (1968); United Steelworkers of America, AFL–CIO v. National Labor Relations Board, 126 U.S.App.D.C. 215, 376 F.2d 770, 773 (1967), cert. denied Northwest Engineering Co. v. NLRB, 389 U.S. 932, 88 S.Ct. 297, 19 L.Ed.2d 285; and Gerstenfeld v. Jett, 126 U.S.App.D.C. 119, 374 F.2d 333, 335 (1967).

The petitioner's allegation that he and "all other camp prisoners" are wrongfully denied work release privileges must be read in conjunction with pertinent provisions of Title 18, United States Code § 4082:

> (c) The Attorney General *may* extend the limits of the place of confinement of a prisoner as to whom there is reasonable cause to believe he will honor his trust, by authorizing him, under prescribed conditions, to—
>
> \*  \*  \*  \*  \*  \*
>
> (2) work at paid employment or participate in a training program in the *community* on a voluntary basis while continuing as a prisoner of the institution or facility to which he is committed, provided that—
>
> (i) representatives of local union central bodies or similar labor union organizations are consulted;
>
> (ii) such paid employment will not result in the displacement of employed workers, or be applied in skills, crafts, or trades

in which there is a surplus of available gainful labor in the locality, or impair existing contracts for services; and

(iii) the rates of pay and other conditions of employment will not be less than those paid or provided for work of similar nature in the locality in which the work is to be performed.

Manifestly, this subsection vests discretion in the Attorney General and those acting by virtue of his authority (1) to determine, within the statutory limitations spelled out in subparagraphs (i), (ii), and (iii), where the authorized work-release programs shall be implemented; and (2) to apply appropriate standards in selecting the inmates eligible for those programs. Here, as in other areas of prison administration considered in this memorandum, the Courts will not interfere with the Attorney General's authorized exercise of discretion unless such exercise is arbitrary or capricious.

For the reasons stated, it is

Ordered that the petition for writ of habeas corpus filed herein should be, and the same hereby is, dismissed.